# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>    Plaintiff,<br><br>vs.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>    Defendant, | Case No.: 1:18-cv-00505-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>**(Dkt. 17)**<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>**(Dkt. 28)** |

Pending before the Court is (1) Plaintiff's Motion for Summary Judgment (Dkt. 17) and (2) Defendant's Motion for Summary Judgment (Dkt. 28). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

This is an action under the Freedom of Information Act ("FOIA") to compel Defendant Bureau of Land Management ("BLM") to produce records that Plaintiff Western Watersheds Project ("WWP") requested in two unrelated FOIA requests in 2017 and 2018. The first request (FOIA Control Number 2018-00056), sent on September 27, 2017, concerned an audio recording and presentation slides from a BLM National Office presentation that occurred on September 21, 2017, regarding changes to the BLM's implementation of several laws. The second request (FOIA Control Number 2018-00591), sent on March 14, 2018, concerned Endangered Species Act ("ESA") consultation records related to the BLM's Converse County Oil and Gas Project in Wyoming. According to WWP's Complaint, the BLM did not produce a full response or

**MEMORANDUM DECISION AND ORDER - 1**

determination with respect to either FOIA request within the time allowed by statute and, to that end, WWP has received no records or other legally adequate response concerning either request.[1]

The BLM answered WWP's Complaint on February 7, 2019, filing an Amended Answer on February 14, 2019. Four days later, WWP filed its Motion for Summary Judgment, requesting that the Court enter (1) summary judgment declaring that the BLM violated FOIA by failing to timely respond to both requests, and (2) an order directing the BLM to immediately release all responsive records and enjoining BLM from continuing to withhold records to which WWP is entitled. The parties agreed to stay the briefing on WWP's Motion for Summary Judgment in the hopes of informally resolving the case; when that proved unsuccessful, the BLM also moved for summary judgment, arguing that (1) it complied with 2018-00056 in full on February 25, 2019 and, therefore, WWP's First, Second, and Third Claims for Relief should be dismissed; and (2) despite its diligence in attempting to timely respond to 2018-00591, unusual circumstances justify the need for additional time.

## LEGAL STANDARDS

**A.  Summary Judgment**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law."

---

[1] WWP's Complaint contains six Claims for Relief, divided equally between the two FOIA requests: (1) "Violation of FOIA – Failure to conduct an adequate search for records responsive to 2018-00056" (First Claim for Relief); (2) "Violation of FOIA – Failure to make an adequate determination as to 2018-00056" (Second Claim for Relief); (3) "Violation of FOIA – Improper withholding of records responsive to 2018-00056 ("Third Claim for Relief"); (4) "Violation of FOIA – Failure to conduct an adequate search for records responsive to 2018-00591" (Fourth Claim for Relief); (5) "Violation of FOIA – Failure to make an adequate determination as to 2018-00591" (Fifth Claim for Relief); and (6) "Violation of FOIA – Improper withholding of records responsive to 2018-00591 ("Sixth Claim for Relief"). *See generally* Compl. (Dkt. 1).

**MEMORANDUM DECISION AND ORDER - 2**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id*. The court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will bear the burden of proof on an issue at trial, it mush show that no reasonable trier of fact could not find in its favor. *See id*. at 325. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id*. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the Court is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, the court must enter summary judgment in favor of the movant. *See Celotex*, 477 U.S. at 323.

**MEMORANDUM DECISION AND ORDER - 3**

The standard applicable to motions for summary judgment does not generally change if the parties file cross motions, as is the case here. *See, e.g., Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the court must evaluate each party's motion on its own merits. *See Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**B.     FOIA**

FOIA "was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (internal citation omitted). The goal of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id*. (internal citation omitted). At the same time, FOIA contemplates that the government may have legitimate reasons for withholding some information from the public. *See id*. Accordingly, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). These nine FOIA exemptions are "explicitly made exclusive and must be narrowly construed." *Id*. at 565 (internal citations omitted).

FOIA cases are typically decided on motions for summary judgment because the facts are rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). Upon a motion for summary judgment, a district court analyzes the withholding of documents *de novo*. 5 U.S.C. § 552(a)(4)(B). FOIA permits a district court to enjoin a defendant agency from withholding agency records or to order a defendant agency to produce any improperly withheld records. *See id*.

A defendant agency "must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of

records have been disclosed after redaction of exempt information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013); *accord Lahr*, 569 F.3d at 973; *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The agency bears the burden to show that it has complied with its obligations under FOIA. *See* 5 U.S.C. § 552(a)(4)(B).

## DISCUSSION

To begin, the BLM concedes that it did not timely respond to 2018-00056, but it says that it ultimately complied with the request in full on February 25, 2019:

> Request 2018-00056, to BLM in Washington, D.C., was for a presentation to BLM Secretary of Interior Zinke. The Washington Field Office of BLM had a large volume of FOIA requests [(350 requests by the end of 2017)]. It processed those requests on a first-in, first-out basis.
>
> The first office assigned to respond to the request did not have the records. The FOIA office mistakenly failed to reroute the request to the correct office. It did not realize this mistake until Plaintiff filed this lawsuit.
>
> On February 25, 2019, BLM produced the records to Plaintiff. BLM therefore complied with the request in full on February 25, 2019. . . . .
>
> Request 2018-00056, to the Washington, D.C. office, was not responded to timely. BLM dropped the ball on it. However, BLM complied with the request in full on February 25, 2019.

BLM Resp. to WWP MSJ and Cross-MSJ, pp. 3–4, 6 (Dkt. 28) (internal citations omitted). Owing to its eventual production, BLM argues that "[WWP's] Complaint relating to it, the First, Second, and Third Claims, should be dismissed." *Id.* at p. 6 (citing *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (stating production of all nonexempt material, "however belatedly," moots FOIA claims); *Yonemoto v. Dep't of Veterans Affairs*, 305 F. App'x 333, 334 (9th Cir. 2008) (dismissing plaintiff's FOIA claim as moot when agency produced requested records during discovery process in connection with separate civil action)).

In turn, WWP acknowledges that the BLM has provided a full response to 2018-00056 and, therefore, there is no need for the Court to adjudicate WWP's First, Second, and Third

**MEMORANDUM DECISION AND ORDER - 5**

Claims for Relief.  *See* WWP's Resp. to BLM's Cross-MSJ and Reply ISO MSJ, p. 8 (Dkt. 30) ("Adjudication with respect to WWP's first FOIA request is not required.").[2]

However, as to 2018-00591, WWP contends that the BLM violated FOIA's deadline to conduct an adequate search and/or make a timely and adequate "determination" once it received WWP's request.  *See* WWP's Mem. ISO MSJ, p. 9 (Dkt. 17-1) (citing 5 U.S.C. § 552(a)(6)(A)(i); 43 C.F.R. § 2.16(a)).  The BLM concedes that its response to 2018-00591 has been delayed, but it argues that exceptional circumstances exist to merit the delay and that it has consistently exercised due diligence in responding to WWP's request.  *See* BLM Resp. to WWP MSJ and Cross-MSJ, pp. 3–7 (Dkt. 28) (citing 5 U.S.C. § 552(a)(6)(C)(i)).  The facts informing these competing arguments are largely undisputed and include the following:

- On March 14, 2018, WWP emailed a FOIA request (2018-00591) to Ms. Litman, the BLM Wyoming's FOIA coordinator, concerning ESA consultations related to the Converse County Oil and Gas Project.  *See* Ex. 8 to Fuller Decl. (Dkt. 17-3).[3]

- On March 22, 2018, the BLM acknowledged its receipt of the March 14, 2018 request, informing WWP that it had been classified as an "other-use requester" and that its request for a fee waiver had been approved.  *See* Ex. 9 to Fuller

---

[2] Despite this, WWP goes on to recount how the BLM only responded to 2018-00056 after WWP initiated the lawsuit and moved for summary judgment, arguing thusly that "WWP has substantially prevailed on its claims related to this request for purposes of FOIA."  WWP's Resp. to BLM's Cross-MSJ and Reply ISO MSJ, pp. 8-9 (Dkt. 30).  The Court makes no such formal determination here; to the extent necessary, WWP is free to separately move for one in the context of additional relief under FOIA.

[3] The BLM describes its multi-step process for responding to a FOIA request as follows:

> When BLM receives a FOIA request, it is assigned to the appropriate filed office to search for the requested records.  The searching office sends to the FOIA office all the potentially responsive records, along with a recommendation as to what information should be withheld due to exemptions.  The FOIA office evaluates the recommendations, and determines if any exemptions apply.  After that, an attorney in the Interior Solicitor's Office reviews any proposed exemption withholdings.  All of this must happen before the requested documents are sent to the requester.

BLM Resp. to WWP MSJ and Cross-MSJ, p. 3 (Dkt. 28) (citing Litman Decl., ¶ 4 (Dkt. 28-3)).

**MEMORANDUM DECISION AND ORDER - 6**

Decl. (Dkt. 17-3). The BLM also notified WWP that the request had been placed on the "complex" processing track, and that the BLM was taking a 30-workday extension under 43 C.F.R. § 2.19(b). *See id.*

- WWP's Kelly Fuller responded on March 27, 2018, thanking the BLM for its response. *See* Ex. 10 to Fuller Decl. (Dkt. 17-3).

- On April 2, 2018, the BLM provided WWP "a list of 'open' [WWP] FOIA requests on file and the status of each." Ex. 11 to Fuller Decl. (Dkt. 17-3). As to 2018-00591 (the then-most-recent of eight outstanding FOIA requests from WWP), the BLM indicated that it was "collecting records." *Id.* ("As a reminder, each request is normally processed within each track (Normal/Complex/Exceptional/Voluminous), on a first-in, first-out basis unless other arrangements/agreements have been made. We are making every effort to review and respond to requests in a timely manner. We apologize for any delay and appreciate your patience. You may limit the scope of your request, which may enable us to process it more quickly, or agree to an alternative time period for processing by communicating with us or our FOIA Public Liaison, Ryan Witt at 202-912-7562.").

- Ms. Fuller responded on April 2, 2018, thanking the BLM for the update. *See* Ex. 12 to Fuller Decl. (Dkt. 17-3).

- On May 24, 2018, the BLM sent WWP an email (with letter attachment) informing WWP that there were 18 FOIA requests ahead of 2018-00591 in queue for processing on the complex track. *See* Ex. 13 to Fuller Decl. (Dkt. 17-3) ("We apologize for this delay. Although we hope that you will wait so that we can complete our search, review duplication, and potential consultation process, please note that you may seek dispute resolution services from our FOIA Public Liaison, Ryan Witt at 202-912-7562 and/or seek dispute resolution services from the Office of Government Information Services (OGIS). You may limit the scope of your request, which may enable us to process it more quickly, or agree to an alternative time period for processing by communicating with us or our FOIA Public Liaison."). At this time, the BLM also informed WWP of its appeal rights "regarding this delay," alongside appeal instructions. *See id.*

- Ms. Fuller responded on May 25, 2018, thanking the BLM for the update. *See* Ex. 14 to Fuller Decl. (Dkt. 17-3).

- On October 12, 2018, Ms. Fuller emailed the BLM to inquire about the status of 2018-00591 and when WWP would receive a final determination and responsive documents. *See* Ex. 15 to Fuller Decl. (Dkt. 17-3).

- On October 16, 2018, the BLM responded to Ms. Fuller's inquiry, stating that 2018-00591 "remains in line for search and review of responsive records" and that, "[d]ue to the complex search and review processes involved with this

project," it expected to provide a determination to WWP by mid-February 2019. Ex. 16 to Fuller Decl. (Dkt. 17-3).

- On November 14, 2018, WWP initiated this action against the BLM. *See* Compl. (Dkt. 1).

- On February 18, 2019, WWP filed its Motion for Summary Judgment. *See* MSJ (Dkt. 17).

- On March 19, 2019, the BLM's Casper, Wyoming Field Office provided the "BLM WY FOIA Office" with a portion of potentially responsive records that the Field Office had collected to date. *See* Litman Decl., ¶ 13 (Dkt. 28-1).

- On April 2, 2019, the BLM's Michael Robinson provided the BLM WY FOIA Office with all potentially responsive records. *See* Robinson Decl., ¶ 12 (Dkt. 28-3). After that, he continued to review the documents to expel duplicates and non-responsive records. *See id*. at ¶ 13.

- On April 15, 2019, the BLM WY FOIA Office produced an interim response to WWP, consisting of 3,468 pages, and also directed WWP to publicly-available information. *See* Litman Decl., ¶ 14 (Dkt. 28-1).

- On May 8, 2019, Mr. Robinson conducted a narrowed search, focusing on the species that the BLM consulted or conferenced with the U.S. Fish and Wildlife Service under Sections 7 and 10 of the ESA. *See id*. at ¶ 15; *see also* Robinson Decl., ¶ 13 (Dkt. 28-3).

- On May 10, 2019, Mr. Robinson provided the BLM WY FOIA Office with all records located as a result of the refined search. *See* Robinson Decl., ¶ 13 (Dkt. 28-3); Litman Decl., ¶¶ 15, 20 (Dkt. 28-1). As of this date, there were approximately 297 files containing 33,269 pages remaining to be processed. *See* Litman Decl., ¶20 (Dkt. 28-1).[4]

- On May 25, 2019, the BLM WY FOIA Office produced a second response to WWP, consisting of 1,183 pages. *See* Second Litman Decl., ¶ 7 (Dkt. 34-1).

- The BLM WY FOIA Office planned to release a third response to WWP the week of June 3, 2019. *See id*. at ¶ 5.[5]

---

[4] At this time, the BLM estimated that "it can make monthly productions and complete processing and production within the next 15-24 months." Litman Decl., ¶ 21 (Dkt. 28-1).

[5] The BLM revised its estimated production, believing that "processing and production can be completed in a significantly shorter time of 4-6 months." Second Litman Decl., ¶ 4 (Dkt. 34-1) (explaining prioritization of 2018-00591, obviated "Submitter consultation notices," and amount of duplicative documents from originally-estimated 33,269 pages).

**MEMORANDUM DECISION AND ORDER - 8**

- On September 9, 2019, the BLM mailed to WWP a "final response," reflecting the BLM's seventh partial response to that point in time (responses four, five, and six were sent on June 20, 2019, August 2, 2019, and August 19, respectively). *See* BLM Add. to Reply ISO Cross-MSJ (Dkt. 36) ("A total of 9,756 pages were provided to Plaintiff.").

Against this factual backdrop, the BLM argues that its delay in processing 2018-00591 is justified, owing to the surrounding exceptional circumstances[6] and its due diligence despite those circumstances. *See generally* BLM Resp. to WWP MSJ and Cross-MSJ, pp. 6-7 (Dkt. 28) ("With 33,000 records still to process, that will necessarily be a time-consuming task. These unusual circumstances justify the need for additional response time. The Court should find these circumstances are exceptional because BLM exercised due diligence on this massive request. It is making a good faith effort to process and produce the records."). The Court agrees, but only to a limited extent.

There is no question that 2018-00591 represents a broad records request, spanning multiple years of a significant oil and gas project, and involving different BLM Field Offices and federal agencies. In this sense, exceptional circumstances indeed exist to warrant the BLM's delay in responding to 2018-00591 and the BLM communicated as much to WWP. *See, e.g.*, 5 U.S.C. § 552(a)(6)(B)(iii) (defining "unusual circumstances" to include "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

---

[6] Namely, (1) 20 open FOIA requests (nine from WWP itself); (2) the voluminous number of records involved; (3) the limited staffing (a single FOIA worker in the Wyoming BLM Office responsible for all FOIA-related duties in the State of Wyoming, combined with part-time assistance from the Subject Matter Expert on the Converse County Oil and Gas Project in the Casper Field Office); (4) interoffice redundancies and duplicative records; and (5) the requirement for each record to go through multiple levels of internal and external review. *See* Litman Decl., ¶¶ 16–19 (Dkt. 28-1); Robinson Decl., ¶¶ 1–9 (Dkt. 28-3).

**MEMORANDUM DECISION AND ORDER - 9**

the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein."). But the fact that *some* delay is warranted due to the overwhelming nature of the coalescing factors inherent within 2018-00591 does not *ipso facto* legitimize the BLM's actual delay concerning its handling (to include the BLM's delay in relaying back to WWP the required determination in the first instance).

There is no getting around the fact that over one-and-a-half years have transpired since WWP first submitted 2018-00591 to the BLM and that it took the BLM over a year to start producing records to WWP that were responsive to that request – and *only after* WWP initiated this action and moved for summary judgment. These realities trouble the Court immensely when considering FOIA's purpose and they cannot be excused by the BLM simply pointing to a need for more time. Had the BLM timely notified WWP of its need for more time and indicated upfront a date-certain for its anticipated determination and/or production, the BLM's position would be more well-taken and, likewise, WWP could have chosen to proceed differently with its FOIA request(s). But the BLM didn't, and instead either went silent in the time between May 2018 and October 2018, or arguably moved the goalposts in providing WWP with a determination and/or production. *See supra*.

Despite all of this, the BLM has responded and claims that it mailed to WWP a "final response" to 2018-00591 on September 9, 2019. *See supra*. Whether there has been a full and final response in the view of WWP is unknown; but, even if not, the adequacy of the response is not implicated by the pending motions because of intervening events.

Accordingly, on or before October 15, 2019, the parties shall file a joint status report, addressing any outstanding issues in need of the Court's consideration moving forward in light of 2018-00056 and 2018-00519's apparent resolution during the pendency of this action.[7]

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that (1) Plaintiff's Motion for Summary Judgment (Dkt. 17) and (2) Defendant's Motion for Summary Judgment (Dkt. 28) are each DENIED AS MOOT, with the Court retaining jurisdiction over the matter to oversee the status report deadline detailed herein and to consider additional motion practice as necessary.

DATED: September 27, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge

---

[7] WWP additionally requests that, alongside any production, the BLM also include a detailed *Vaughn* index describing any records withheld and the exemptions claimed for the withholdings. *See* WWP's Resp. to BLM's Cross-MSJ and Reply ISO MSJ, pp. 2, 5, 9 (Dkt. 30). A *Vaughn* index, with accompanying declaration, ordinarily "identifies each document withheld, the statutory exemption claimed, and an explanation of how disclosure would damage the interest protected." *Schiffer v. F.B.I.*, 78 F.3d 1405, 1408 (9th Cir. 1996). The "purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate opportunity to review, the soundness of the withholding." *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1042 (9th Cir. 1999). The BLM argues that such a request is premature, given that WWP "had not yet received a response withholding any documents." BLM's Reply ISO MSJ, p. 4 (Dkt. 34); *but see id*. at p. 5 ("BLM *did* notify Plaintiff of its reasons for withholding or redacting records from among those already produced, as required by the FOIA.") (emphasis in original). "While a *Vaughn* index is not required by statute – or any other mechanism – an agency claiming an exemption cannot carry its burden by just relying on conclusory or generalized assertions of privilege and a *Vaughn* index has become the accepted 'privilege log' in FOIA cases." *Advocates for the West, v. U.S. Dep't of Justice*, 331 F. Supp. 3d 1150, 1159 (D. Idaho 2018) (citations omitted). Given the unique circumstances at play here (particularly the passage of time since 2018-00591), there is no reason to postpone the exchange of a *Vaughn* index now that the BLM has completed its production. Such an index is necessary in this case and the fact that WWP filed a motion for summary judgment *before* any production is a function of the BLM's delay, not WWP's hastiness. *See, e.g.*, *People ex rel. Brown v. E.P.A.*, 2007 WL 2470159, *1–2 (N.D. Cal.). The *Vaughn* index shall be produced on or before October 15, 2019.